# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

JAHMOL HILL,                :
                                  :
             Plaintiff,       :
                                    :
v.                                  :       Case No. 5:24-cv-191-MTT-AGH
                                    :
Sgt. CRYSTAL TODD, *et al.*,[1]   :
                                    :
             Defendants.     :
_____

## ORDER

In accordance with the Court's previous orders and instructions, *pro se* Plaintiff Jahmol Hill, a pre-trial detainee at Houston County Detention Center in Perry, Georgia, filed a recast complaint (ECF No. 18). As explained below, Plaintiff's excessive force claim against Defendant Childs, his failure to intervene claims against Defendants Todd, Adams, Morrow, Hosier, Bacon, and Mossbarger, and his deliberate indifference to a serious medical need claims against Defendants Bacon, Bass-Alexander, Wich, and Mossberger will be allowed to proceed for further factual development. It is **RECOMMENDED**, however, that Plaintiff's claims against

---

[1] The Court ordered Plaintiff to recast his complaint and informed him that the recast complaint would take the place of the original complaint. Order 11, Aug. 16, 2024, ECF No. 14. Thus, Plaintiff's recast complaint (ECF No. 18) is now the operative complaint in this civil action. *See Schreane v. Middlebrooks*, 522 F. App'x 845, 847 (11th Cir. 2013) (noting that generally, an amended complaint supersedes the original complaint). Plaintiff's recast complaint removes Correct Health, Major Brian Blanton, Lt. Michelle Westbrook, and Danella Torres as Defendants. Recast Compl. 4-6, ECF No. 18. Therefore, the Clerk of Court is **DIRECTED** to terminate them as Defendants. Plaintiff added Lt. Runyon, Deputy Blake Adams, Deputy Stephen Hosier, Deputy Thomas Morrow, and Deputy Christopher Freeman as Defendants. *Id.* Consequently, the Clerk of Court is **DIRECTED** to add these individuals as Defendants. Finally, Plaintiff amended the name of Defendant Wanetta Bass to Wanetta Bass-Alexander. *Id.* at 4. As such, the Clerk of Court is **DIRECTED** to make this change as well.

Defendants Freeman and Runyon be **DISMISSED** without prejudice for failure to state a claim for which relief may be granted.

## PRELIMINARY SCREENING OF PLAINTIFF'S COMPLAINT

### I.    Standard of Review

The PLRA directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. 28 U.S.C. § 1915A(a).    Courts must also screen complaints filed by a plaintiff proceeding IFP.    28 U.S.C. § 1915(e).    Both statutes apply in this case, and the standard of review is the same.    "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed."    *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted).    Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."    28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted).    On preliminary review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id*. (citations omitted).    A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process.    *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative

complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

## II.    Factual Allegations

Plaintiff spread his factual assertions throughout his recast complaint and within multiple attachments.   It was thus difficult for the Court to determine a clear statement of allegations or ascertain which allegations were being used to support which claims against which Defendants.   *See* Recast Compl, ECF No. 18.   As best the Court can tell, from May 6, 2024 through May 16, 2024, Plaintiff engaged in both destructive and self-harming behavior at Houston County Detention Facility. Recast Compl. Ex. J, ECF No. 18-6.   Specifically, he destroyed light fixtures, removed rubber from the walls, and attempted to cut himself with glass from the broken light fixtures.   *Id.*

At approximately 6:30 p.m. on May 16, 2024, detention officials removed Plaintiff from his cell and placed him in a restraint chair because he was once again trying to break a light fixture.   *Id.*; Recast Compl. Ex. L, ECF No. 18-8; Recast Compl. 6.   Sometime after being placed into the restraint chair, Nurses Mossbarger and Bacon were called to check Plaintiff's restraints and Plaintiff showed them that he had placed a screw into his mouth.[2]   Recast Compl. Ex. J; Recast Compl. Ex. L; Recast Compl. 6.   Plaintiff did not spit out the screw.   Recast Compl. 6.

Plaintiff alleges that Defendant Corporal Childs then "reached in [Plaintiff's] mouth to remove the screw that Plaintiff Hill placed in his mouth" and "with his two thumbs physically and with force[] grabbed the screw and with a back in forth motion

---

[2]  Defendant Mossbarger's name is spelled in different ways, but it appears that Mossbarger is the correct spelling.   *See* Recast Compl. Ex. J.

grinded the screw against Plaintiff Hill[']s jawline."  *Id*.  Plaintiff states he screamed in pain and begged Defendant Child to stop but that "Childs kept going[.]"  *Id*.  At some point, Defendant Childs told Deputy Allen to get the screw and "Deputy Allen told him he cant [sic] find it[.]"  Recast Compl. Ex. L.  Plaintiff states that the screw was embedded in his jaw.  *Id*.  Plaintiff asserts that after Defendant Childs removed his hands from Plaintiff's mouth, Plaintiff began spitting out "dark chocolate color blood[.]"  Recast Compl. 6.

Plaintiff further complains that Defendant Todd "did not stop [Childs] from being insubordinate towards Plaintiff Hill allowing [Childs] to continue to assault Plaintiff."  *Id*. at 7.  Plaintiff states that Nurses Bacon and Mossberger were "present when the assault took place" as well as Defendant Deputies Adams, Hosier, and Morrow who were "shocked at what they just witnessed."  *Id*. at 9.  Of those present, Plaintiff says that Nurse Mossbarger was the only one who opined Plaintiff needed to go to the hospital.  *Id*.

Around 7:10 p.m., Plaintiff told Defendant Mossbarger and Morrow that he "was choking on the screw."  Recast Compl. Ex. D, ECF No. 18-1.  Plaintiff complains that Mossbarger "felt the screw inside of Plaintiff Hills [sic] mouth[,]"and "seen [sic] that Plaintiff Hill was in pain and was still actively bleeding and neglected to give Plaintiff Hill adequate medical emergency attention of the guidelines of the contract through the contractor Correct Health."  *Id*.  Around 7:15 p.m., while still confined to the restraint chair, Plaintiff was placed in a cell and put on a "15-minute observation watch."  Recast Compl. Ex. J; Recast Compl. Ex. L.  Plaintiff was seen

by Defendant Nurse Wich around 9:00 p.m. for a range of motion check and Plaintiff states that he "grabbed contractor Wich's finger and showed her where the screw was moving down Plaintiff Hill['s] throat."   Recast Compl. Ex. D.

Plaintiff states that at 9:45 p.m., he was brought to medical to see Defendant Bass-Alexander "on a zoom video call."   Recast Compl. Ex. E, ECF No. 18-2. Plaintiff states that he informed Defendant Bass-Alexander that he was still bleeding and was in pain, and a deputy held a cup for Plaintiff to spit the blood in his mouth into so he could show it to Defendant Bass-Alexander.  *Id*.   Plaintiff says Defendant Bass-Alexander ignored him and dismissed him, and Defendant Bass-Alexander told detention officials and nurses to return Plaintiff to his cell and give him Tylenol.  *Id*.

Plaintiff also states he was seen via zoom video in medical "around 11" and the provider "told them to give [Plaintiff] Tylenol and send [him] back" to the cell. Recast Compl. Ex. L.   Around 3 a.m., Plaintiff was released from the restraint chair but remained in a cell.  *Id*.   Plaintiff states that also around 3 a.m., "the screw shifted and started to move down [his] throat" and that he was choking on his spit and the screw "till [he] turned [his] head in a downward motion."  *Id*.   Plaintiff states that the blood "was not [as] dark it was way lighter" and that he could not sleep because "everytime [he] tried [he] was choking and feeling the screw[.]"  *Id*.

Plaintiff states that at 6:00 a.m. on May 17, he "complained to Corporal Ross about the screw being embedded in [his] jawline."   Recast Compl. Ex. E.   Around 9:30 a.m., Plaintiff was seen by more medical personnel who "sent [Plaintiff] to the hospital ASAP."   Recast Compl. Ex. F, ECF No. 18-3.   Plaintiff asserts that at the

6

hospital "they put [him] to sleep and cut [the screw] out [his] mouth."   Recast Compl.
Ex. L.   Plaintiff claims that if Defendants Bacon, Bass-Alexander, Wich, and
Mossberger "would have sent [him] to the ER when needed[,] maybe [he] would not
be stuttering."   Recast Compl. 8.

Plaintiff also complains that following this incident he filed numerous
grievances about the incident and "inadequate medical treatment" that were denied
by Defendant Runyon.   Recast Compl. Ex. F; Recast Compl. Ex. G, ECF No. 18-4;
Recast Compl. Ex. H, ECF No. 18-5.   Plaintiff complains that Defendant Runyon
"refused [his] entire grievance procedure[, and] denied [him] access to the
grievances[,]" and "refused [Plaintiff] due process on legal work for [his] case[.]"
Recast Compl. 8.

## III.  Plaintiff's Claims

As a preliminary matter, it is difficult to discern Plaintiff's allegations and
claims due to his inclusion of numerous attachments and his failure to set forth "a
short and plain statement of the claim" as mandated by Rule 8 of the Federal Rules
of Civil Procedure.   *See* Recast Compl.   Plaintiff was advised in the Court's August
16, 2024 Order to Recast that Rule 8(d)(1) requires that "[e]ach allegation must be
simple, concise, and direct[.]"   Order 5, Aug. 16, 2024 (alteration in original).
Furthermore, Plaintiff was instructed that his "***recast complaint must be no
longer than ten (10) pages in its entirety***" and he "is not to include any exhibits
or attachments."   *Id.* at 12 (emphasis in original).   However, Plaintiff's Recast

Complaint including exhibits totals 24 pages.[3]   *See* Recast Compl.

Thus, despite the Court's specific instructions, Plaintiff exceeded the Court's prescribed page limit and included numerous attachments.   He also failed to abide by Rule 8 in that his complaint is neither short nor plain.   Fed. R. Civ. P. 8.   Plaintiff was unambiguously cautioned that his failure to fully and timely comply with the Court's Order could result in the dismissal of this action.   Order 12, Aug. 16, 2024. The Court could therefore recommend dismissal of Plaintiff's entire civil action on the grounds that Plaintiff failed to comply with the Court's August 16th Order.   *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion."); *Duong Thanh Ho v. Costello*, 757 F. App'x 912, 914-915 (11th Cir. 2018) (holding that the district court did not abuse its discretion in *sua sponte* dismissing without prejudice prisoner's *pro se* § 1983 complaint for failure to comply with court order to file amended complaint where order expressly informed prisoner of deficiencies in his complaint and rules that he needed to follow in filing amended complaint).

The Court is opting not to recommend dismissal for Plaintiff's failure to obey a Court order this time.   However, Plaintiff is advised that the Court expects full and timely compliance with its orders and instructions, and any future failure to comply with a Court order could result in sanctions and/or dismissal of this civil action.

---

[3]   Plaintiff also included numerous attachments in the recast complaint and subsequently filed sixteen (16) more pages of attachments, many of which are not relevant to his complaint, and some of which relate to incidents that occurred after he filed the original complaint.   *See* Recast Compl.; Pl.'s Letter & Exhibits, ECF No. 19.

*Claims against Defendant Deputy Freeman*

Plaintiff names Deputy Christopher Freeman as a party to this action. Recast Compl. 6. However, he makes no factual allegation that specifically links Defendant Freeman to any claim. Plaintiff was previously advised in the Order to recast that if he "fails to link a named Defendant to a claim, the claim will be dismissed; if Plaintiff makes no allegations in the body of his complaint against a named Defendant, that Defendant will be dismissed." Order 11, Aug. 16, 2024. To state a claim against a defendant, a plaintiff must link that defendant to an alleged constitutional violation. *See Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) (citations omitted) (affirming dismissal for failure to state a claim when "complaint fail[ed] to allege facts that associate[d]" defendants with constitutional violation); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (citation omitted) (stating that "section 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation"); *Butler v. Ga.,* No. 22-10291, 2022 WL 17484910, at *2 (11th Cir. Dec. 7, 2022) (citing *Douglas*, 535 F.3d at 1321-22) ("The plaintiff's factual allegations must connect the defendants with the alleged constitutional violation."). Plaintiff's failure to link Defendant Freeman to any constitutional violation is fatal to his claims against Defendant Freeman. Plaintiff's claims against Defendant Freeman should consequently be dismissed.

<u>*Claim against Defendant Runyon for denying Grievances*</u>

Plaintiff's claims against Defendant Runyon are rooted in the denial of Plaintiff's grievances and Plaintiff's failure to gain the relief he requested, i.e. one hundred thousand dollars and a plea deal on his criminal charges. *See* Recast Compl. 8; Recast Compl. Ex. G; Recast Compl. Ex. L. However, prisoners and pre-trial detainees do not have a constitutional right to participate in grievance procedures, to have those procedures properly followed, or to any preferred outcome to a filed grievance. *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (citations omitted) (affirming dismissal as frivolous prisoner's claims that he was denied use of the prison's grievance procedure and holding that an inmate has no constitutionally-protected liberty interest in access to that procedure); *Dunn v. Martin*, 178 F. App'x 876, 878 (11th Cir. 2006) (prison officials' failure to respond to prisoner's letters and grievances and to follow prison regulations regarding grievance responses did not implicate due process concerns).

Thus, to the extent Plaintiff raises a § 1983 claim against Defendant Runyon based on Plaintiff's inability to access the grievance procedure or contends that he has a constitutional interest in a particular outcome of the grievance process, Plaintiff fails to state a claim for relief. Accordingly, his claims against Runyon are subject to dismissal.

<u>*Excessive Force Claim*</u>

A pretrial detainee's excessive force claim arises under the Fourteenth Amendment and allegations "must show only that the force purposely or knowingly

10

used against him was objectively unreasonable.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).    "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case[,]" and the determination of reasonableness is made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).    Courts "must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish,* 441 U.S. 520, 540, 547 (1979)).    In determining whether the amount of force used against a pretrial detainee was objectively reasonable, the Court must consider "the facts and circumstances of [the] particular case[,]" including

> the relationship between the need for use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.*

Here, Plaintiff attached an inmate grievance and an officer's report showing that Plaintiff was breaking light fixtures in his cell and attempting to harm himself over the course of several days.    *See* Recast Compl. Exs. J & L.    Plaintiff admits that when detention officials placed him in a restraint chair to prevent him from causing further damage to the jail and/or himself, he placed a screw in his mouth and refused

to spit the screw out when asked to do so by detention officials. *Id*. Defendant Childs then used his hands to try to remove the screw from Plaintiff's mouth. *Id*.; Recast Compl. 6-7. Plaintiff complains that "Defendant Childs . . . reached in[to Plaintiff's] mouth to remove the screw that [Plaintiff placed [there and] with [Defendant Child's] two thumbs physically and with force[] grabbed the screw and with a back in forth motion grinded [sic] the screw against Plaintiff Hill[']s jawline." *Id*. at 6. Plaintiff complains that he "screamed in pain" and begged Defendant Childs to stop but that "Childs kept going[.]" *Id*. at 6-7. Plaintiff states that "after Defendant Childs was satisfied with assaulting [Plaintiff, Childs] removed his thumbs" and Plaintiff's mouth began to bleed. *Id*. Plaintiff contends he was taken to the hospital the following morning where he underwent surgery. Recast Compl. Ex. F.

Plaintiff's factual allegations about Defendant Childs are at least sufficient at this stage to nudge his "claims across the line from conceivable to plausible," such that the Court cannot conclude that the force used by Childs was not excessive. *Twombly*, 550 U.S. at 570. Therefore, Plaintiff's excessive force claim against Defendant Childs shall proceed for further factual development.

### *Failure to Intervene Claims*

Even if an officer personally did not use excessive force, an officer who is present at the scene can be liable for failing to take "reasonable steps to protect the victim of another officer's use of excessive force[.]" *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008); *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th

Cir. 2007) (same).   But "an observing officer must have both the opportunity to intervene and be in a position to intervene and yet fail to do so."   *Johnson v. White*, 725 F. App'x 868, 878 (11th Cir. 2018) (citing *Hadley*, 526 F.3d at 1331).

Plaintiff claims Defendant Todd failed to intervene and stop Defendant Childs from using excessive force.   Recast Compl. 7.   Plaintiff may also be attempting to raise failure to intervene claims against Defendant Deputies Adams, Morrow, and Hosier when he states "all the Deputyies [sic] was [sic] shocked at what they just witnessed" as well as Nurse Bacon and Nurse Mossbarger when he states they were "present when the assault took place[.]"   *Id.* at 9.   These allegations are also at least sufficient at this stage of litigation to suggest plausible claims such that the Court cannot conclude that his failure to intervene claims are subject to *sua sponte* dismissal.   *Twombly*, 550 U.S. at 570.   Therefore, Plaintiff's failure to intervene claims against Defendants Todd, Adams, Morrow, Hosier, Bacon, and Mossbarger shall proceed for further factual development.

### *Deliberate Indifference to a Serious Medical Need*

To state a claim for deliberate indifference to serious medical needs, a plaintiff must allege "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (citation omitted). The first prong is objective, and

> a serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.

> In either of these situations, the medical need must be one that, if left
> unattended, pos[es] a substantial risk of serious harm.

*Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (alteration in original) (internal quotation marks and citations omitted).

To establish the second element—deliberate indifference—a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that his own conduct put the inmate at substantial risk of serious harm"; (2) disregarded that risk; and (3) "acted with 'subjective recklessness as used in the criminal law[.]'" *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)).  Subjective awareness requires that the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837). "'[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.  Each individual defendant must be judged separately and on the basis of what that person kn[ew].'" *Dang ex rel. Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (alterations in original) (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008)).  To establish that a particular "defendant acted with 'subjective recklessness as used in the criminal law'" the plaintiff must allege "that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1255.[4]

---

[4] The Eighth Amendment, which prohibits the infliction of cruel and unusual punishment, sets the

The final prong simply requires "that a defendant have a causal connection to the constitutional harm." *Goebert*, 510 F.3d at 1326 (citation omitted) (explaining that "as with any tort claim, [the plaintiff] must show that the injury was caused by the defendant's wrongful conduct").

Here, Plaintiff confusingly contradicts what was going on with the screw throughout the evening of May 16. For example, he alleges that nurses saw the screw was embedded in his jawline; alternatively, he states that a nurse saw the screw was stuck under his tongue, and he also alleges that he alerted a nurse and detention officer that the screw was going down his throat causing him to choke. *See* Recast Compl. 7; Recast Compl. Ex. D,; Recast Compl. Ex. L. Thus, it is difficult for the Court to ascertain whether the screw was impaled somewhere in his mouth, whether Plaintiff continued to loosely hold a screw in his mouth throughout the night, or whether the screw was initially embedded somewhere into his mouth then came loose at some point only to once again somehow become lodged again in his mouth. Because Plaintiff's allegations are vague and contradictory, the Court cannot definitively find that Plaintiff having a screw somewhere in his mouth for several hours meets the objective element of a serious medical need. However, out of an

---

standard that governs deliberate indifference claims by convicted state prisoners. "Technically, the Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees[.]" *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). But the standards are the same. *Id.* The United States Court of Appeals for the Eleventh Circuit has not expressly held that *Wade's* subjective recklessness standard applies to pretrial detainees. But the Circuit has consistently held that the deliberate indifference to serious medical needs standards under the Fourteenth and Eighth Amendments are the same. *Id.* Further, this Court has already applied *Wade's* subjective standard to pretrial detainees. *Nelson v. CorrectHealth Muscogee, LLC*, No. 4:20-CV-213 (CDL), 2024 WL 3558367, at *1 n.1 (M.D. Ga. July 25, 2024). Thus, it appears the subjective recklessness standard articulated by the Eleventh Circuit in *Wade* applies to pretrial detainees as well.

abundance of caution and because Plaintiff implies that the screw in his mouth caused bleeding and was painful, the Court will move into the subjective inquiry.

As to whether any Defendant was deliberately indifferent, Plaintiff makes it obvious that his mouth was being constantly examined and that several medical personnel and detention officers were monitoring his situation.  *See* Recast Compl. 7; Recast Compl. Ex. D; Recast Compl. Ex. E; Recast Compl. Ex. F; Recast Compl. Ex. H; Recast Compl. Ex. J; Recast Compl. Ex. K, ECF No. 18-7; Recast Compl. Ex. L. Furthermore, Plaintiff was on at least two occasions given medication to treat his pain.  Recast Compl. Ex. E; Recast Compl. Ex. F.  Thus, while Plaintiff frames these claims as a denial of medical aid, his allegations do not support such claims.  *See Adams,* 61 F.3d at 1545 (quoting *Estelle*, 429 U.S. at 107) ("[T]he question of whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."); *Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989) (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) (no recovery under § 1983 for disagreements between patient and doctor about what is medically necessary or justifiable); *Blanchard v. White Cnty. Det. Ctr. Staff*, 262 F. App'x 959, 964 (11th Cir. 2008) (citing *Harris*, 941 F.2d at 1504) (noting that when a "claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'").

However, Plaintiff also claims that if Defendants Bacon, Bass-Alexander, Wich, and Mossberger "would have sent [him] to the ER when needed[,] maybe [he] would not be stuttering." Recast Compl. 8. "When the deliberate indifference claim turns on a delay in treatment, we consider '(1) the seriousness of medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay.'" *Blanchard*, 262 F. App'x at 963-64 (quoting *Goebert*, 510 F.3d at 1327). Here, as previously explained, Plaintiff has repeatedly contradicted himself as to where the screw was in his mouth and thus it is difficult to discern the seriousness of his medical need. However, Plaintiff does allege that waiting until the morning to take him to the hospital caused him pain and has caused him to stutter. Therefore, Plaintiff's delay in treatment claims against Defendants Bacon, Bass-Alexander, Wich, and Mossberger for deliberate indifference to a serious medical need will be allowed to proceed for further factual development.

## IV.    Conclusion

For the previously stated reasons, Plaintiff will be allowed to proceed for further factual development on his excessive force claim against Defendant Childs, his failure to intervene claims against Defendants Todd, Adams, Morrow, Hosier, Bacon, and Mossbarger, and his deliberate indifference to a serious medical need claims against Defendants Bacon, Bass-Alexander, Wich, and Mossberger. It is **RECOMMENDED**, however, that Plaintiff's claims against Defendants Freeman and Runyon be **DISMISSED** without prejudice for failure to state a claim for which relief may be granted.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with Marc T. Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.   The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Objections to the Recommendation are limited in length to twenty (20) pages. A party seeking permission to exceed these limitations shall do so by filing a written motion no later than five (5) days in advance of the deadline for filing objections and by specifying the number of pages requested.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional claims against Defendants Childs, Todd, Adams, Morrow, Hosier, Bacon, Mossbarger, Bass-Alexander, and Wich, it is accordingly **ORDERED** that service be made on Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service

19

indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the

deadline.

Discovery materials shall not be filed with the Clerk of Court.    No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.    The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:    except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.    No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.    Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred-twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED and RECOMMENDED** this 8th day of May, 2025.

 s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE